UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


ROBERT MARTIN,                         )         CASE NO.  3:07 CV3857
                                       )
              Petitioner,              )         JUDGE KATHLEEN M.  O'MALLEY
                                       )
        v.                             )
                                       )         MEMORANDUM OF OPINION
                                       )          AND ORDER
WARDEN TAMBINI, et al.,                )
                                       )
              Respondents.             )


        Pro se petitioner Robert Martin filed the above-captioned petition on December

19, 2007 seeking habeas relief pursuant to 28 U.S.C. § 2241.  Mr. Martin named as respondents

Warden Tambini at Hocking Correctional Facility (HCF) in Nelsonville, Ohio, Terry Collins,

Director of the Ohio Department of Rehabilitation and Corrections, and the "RIB" Hearing

Officer.  Mr. Martin, who was incarcerated at HCF during the relevant period of time about which

he is complaining, seeks an order reversing the decision of the Rules Infraction Board (RIB) and

$150,000.00 in damages.[1]

## Background

Mr. Martin was returning to HCF in a wheelchair from a dermatology appointment on November 7, 2007. As he was wheeling himself out of the 'shakedown' room, petitioner stopped and stood beside the wheelchair to tuck his shirt in his pants. It was allegedly at that instant that fellow inmate McCullough came out of the 'shake down' room and moved petitioner from the chair, declaring: "[T]his is mine."  Petitioner maintains that McCullough was unaware of the fact that the wheelchair was unlocked. As a result, he claims the inmate fell into the chair and "subsequently hit his head."  It was at that point that petitioner alleges he called for the "charging officer."  The officer arrived on the scene and issued a conduct report charging petitioner with a rule violation.

The conduct report attached to the petition indicates that Officer Woltz heard yelling at approximately 6:00 p.m. on November 7, 2007 coming from the main hallway of the west end.  Upon further investigation he came upon inmate McCullough lying on the floor. Before a fellow officer who was present could answer his query regarding the nature of McCullough's predicament, several inmates volunteered that Mr. Martin "physically removed inmate McCullough from the wheelchair throwing him to the floor. When McCullough fell he hit his head on the west end crash gate and got his left arm caught in the arm rest of the wheelchair. Officer McManis had to help him free his arm. While the officer was helping to free his arm Martin began pulling on the wheelchair." (Pet.'s Ex. A.) Officer Woltz agreed to provide

---

[1]Since the date this petition was filed, Mr. Martin has been transferred to Northeast Ohio Correctional Center in Youngstown, Ohio.

2

his input at the Disciplinary Hearing.

When Mr. Martin testified before RIB on November 21, 2007, he simply explained: "Mccoulgh [sic] pushed himself into my wheelchair as I was trying to put my shirt in. He fell to the floor. I called for the officer. The inmate was still partially in the chair and on the floor." (Pet.'s Ex. B.)

The RIB determined that Mr. Martin violated Rule #4.  He appealed the decision claiming that (1) the RIB denied his request for a relevant witness; (2) no evidence was introduced at the hearing to support the RIB's decision; and (3) the conduct report was based on uncorroborated hearsay and a confidential informant's statement without any inquiry into his credibility.  He argued that he was denied the opportunity to view a videotape of the incident and that the charging officer refused to view it at all. Moreover, Mr. Martin maintained that the RIB was required by <u>Superintendent v. Hill</u>, 105 S. Ct. 2768" to apply a "substantial evidence" test as opposed to a "some evidence" test to determine whether he committed a rules infraction. He claimed, further, that prison policy limited his placement in a disciplinary cell (DC) to 15 days. Instead, respondent allegedly used "DC & LC harmoniously with no distinction for a bigger cell outside DC's dimensions. Transfer to London or NCCI segregation units would be proper."(Pet.'s Ex. D.)

The RIB's decision was affirmed by Warden Tambini on November 21, 2007.  Mr. Martin appealed that determination to ODRC Director Terry Collins, who affirmed the RIB decision on November 28, 2007.

*Analysis*

Mr. Martin argues that the RIB refused to consider an exculpatory videotape that

3

would allegedly show inmate McCullough was the "proximate cause of his own injuries." (Pet. at 2.)  He believes the RIB's refusal to consider video evidence, as well as its reliance on the "untested statements" of confidential informants denied him procedural due process. Petitioner further asserts that his Fourteenth Amendment right to equal protection was violated because his placement in disciplinary confinement (D.C.) exceeded the prison policy term of 15 days, and he served more than 30-180 days in local control (L.C.) in the same D.C. cell. He requests that the RIB's finding of guilt be reversed and that notice be provided to the Parole Board because it considers Class II conduct report convictions in its evaluation of prisoners for early release. With regard to damages, Mr. Martin seeks $150,000.00 for the respondents' alleged willful violation of his constitutional rights and for extreme emotional distress.

## 28 U.S.C. § 2241

A habeas corpus petition under Section 2241 may be used to attack the "fact or duration" of a prisoner's confinement, and seeks the remedy of either immediate release or a shorter period of confinement. Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973). Thus, Section 2241 can be used to challenge the denial of parole or the revocation of good-time credits in a prison disciplinary proceeding. But actions challenging a prisoner's "conditions of confinement" must be brought under the civil rights laws. Id.

Virtually every aspect of a prisoner's daily life that does not affect the duration of his confinement is considered a "condition of confinement," and hence claims relating to such conditions may only be brought under the civil rights laws. Complaints that involve only conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the

4

incarceration of the petitioner." <u>Maddux v. Rose</u>, 483 F.Supp. 661, 672 (E.D.Tenn.1980). A state inmate therefore should bring a claim challenging the conditions of confinement under 42 U.S.C. § 1983. <u>See</u> <u>Austin v. Bell</u>, 927 F.Supp. 1058, 1066 (M.D.Tenn.1996); <u>see</u> <u>also</u> <u>Nelson v. Campbell</u>, 541 U.S. 637, 643 (2004) (constitutional claims that merely challenge the conditions of a prisoner's confinement as opposed to the fact of his conviction or the duration of his sentence fall outside the "core" of habeas corpus and may be brought pursuant to § 1983).

Mr. Martin alleges that his disciplinary conviction had adverse consequences, such as placement in disciplinary segregation.  However, this consequences has no direct effect on when he will be released from custody.  While petitioner alleges that the disciplinary conviction will reduce his chances of receiving parole in the future,  such a speculative effect is not the kind of direct, immediate effect on the duration of a prisoner's confinement that is cognizable in a habeas corpus proceeding. <u>See</u> <u>Hughes v. Burkett</u>, No. 05-1411, 2006 WL 786794,at *2 (6th Cir. Mar. 28, 2006)("speculative, collateral consequences of prison disciplinary conviction are insufficient to create a liberty interest."). Matters that do not have an immediate and direct impact upon the duration of confinement in the same fashion that a loss of good conduct time will are generally considered conditions of confinement. Thus, the fact that Mr. Martin's disciplinary conviction may adversely affect his chances of receiving parole at some date in the future does not alter the nature of his claims-they remain claims regarding the conditions of his confinement. <u>Hadley v. Holmes</u>, 341 F.3d 661, 665 (7th Cir.2003) (mere possibility that a prisoner's claim had the potential to affect the duration of his confinement is "too attenuated from this proceeding to state a claim under § 2254").

Because Mr. Martin's disciplinary conviction did not result in the loss of good

conduct time or otherwise lengthen the term of his confinement, his claims are not cognizable

through a petition for habeas corpus under 28 U.S.C. § 2241 . Carson v. Johnson, 112 F.3d 818,

820-21 (5th  Cir.1997) (if favorable determination would not automatically entitle prisoner to

accelerated release, proper vehicle is § 1983 and not § 2254).

       Based on the foregoing, this matter is dismissed pursuant 28 U.S.C. § 2243. The

court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be

taken in good faith.[2]

       IT IS SO ORDERED.

                s/ Kathleen M. O'Malley
                KATHLEEN M. O'MALLEY
                UNITED STATES DISTRICT JUDGE

DATED:  March 19, 2008

---

[2]28 U.S.C. § 1915(a)(3) provides:

      An appeal may bot be taken in forma pauperis if the trial court
      certifies that it is not taken in good faith.